UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT H. ALLINSON,

          Plaintiff,

    v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

          Defendant.

Case No. C15-5772-JCC

**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

    Scott H. Allinson seeks review of the denial of his application for Disability Insurance Benefits (DIB). Mr. Allinson contends the ALJ erred by misevaluating the medical opinion evidence as well as the lay testimony. Dkt. 11 at 1. Mr. Allinson argues that these errors resulted in a residual functional capacity determination (RFC) that failed to account for all of his limitations. *Id.* Due to these errors Mr. Allinson also argues that the ALJ failed to show there were other jobs in the national economy that he could perform. *Id.* Additionally, Mr. Allinson argues that post-hearing evidence undermines the ALJ's findings. *Id.* Mr. Allinson contends this matter should be remanded for payment of benefits or, alternatively, for further proceedings. *Id.* at 18. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

## BACKGROUND

In October 2012, Mr. Allinson applied for DIB, alleging disability as of April 1, 2009. Tr. 206. Mr. Allinson's application was denied initially and on reconsideration. Tr. 75-86, 100-07. Thereafter, Mr. Allinson amended his alleged onset date to February 23, 2011. Tr. 181. After the ALJ conducted a hearing on February 21, 2014, the ALJ issued a decision finding Mr. Allinson not disabled. Tr. 14-26.

## THE ALJ'S DECISION

The ALJ determined that Mr. Allinson last met the insured status requirements of the Social Security Act on March 31, 2011. Tr. 14. Thus, in order to be entitled to DIB, Mr. Allinson was required to establish disability on or before that date. *Id.*; *see Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (to be entitled to DIB claimant must establish disability existed on or before date on which insured status expired). Utilizing the five-step disability evaluation process,[1] the ALJ found:

> **Step one:** Mr. Allinson did not engaged in substantial gainful activity during the period from his alleged onset date of February 23, 2011 through his date last insured (DLI) of March 31, 2011.
>
> **Step two:** Through the DLI, Mr. Allinson had the following severe impairments: alcohol abuse/dependence (in remission), anxiety, depression, degenerative disc disease, obesity and osteoarthritis.
>
> **Step three:** Through the DLI, Mr. Allinson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[2]
>
> **Residual Functional Capacity:** Through the DLI, Mr. Allinson could perform light work as defined in 20 CFR 404.1567(b) with the additional limitations that he could perform work that allowed a sit/stand option with changes every 30 minutes and he could perform unskilled work consisting of simple, repetitive tasks.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

**Step four:** Through the DLI, Mr. Allinson could not perform past relevant work.

**Step five:** Through the DLI, as there were jobs that existed in significant numbers in the national economy that Mr. Allinson could perform, he was not disabled.

Tr. 14-26. The Appeals Council denied Mr. Allinson's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1-7.[3]

## DISCUSSION

### A. Medical Evidence

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a nonexamining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Id.* Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id.* at 830-31. Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Id.* at 831. However, an ALJ must always evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96–6p, 1996 WL 374180, at *2.

### 1. *Kimberly Wheeler, Ph.D., Examining Psychologist*

Mr. Allinson argues the ALJ erred in evaluating the opinion of Dr. Wheeler. Dkt. 11 at 6-10. The Court agrees.

Dr. Wheeler performed a psychological evaluation of Mr. Allinson in April 2011. Tr. 354-59. Dr. Wheeler diagnosed Mr. Allinson with generalized anxiety, panic disorder without agoraphobia, and major depression, recurrent, moderating. Tr. 355. She found Mr. Allinson

---

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

markedly limited in his ability to interact with others, to communicate and perform effectively in a work setting with public contact, to maintain appropriate behavior in a work setting, and to concentrate and stay on track. Tr. 356. She found Mr. Allinson moderately limited in his ability to understand, remember, and persist in tasks following complex instructions, learn new tasks, be aware of normal hazards and take appropriate precautions, and communicate and perform effectively in a work setting with limited public contact. *Id.* The ALJ gave "some weight" to Dr. Wheeler's opinion. Tr. 23. Specifically, the ALJ determined that "[Dr. Wheeler's] findings regarding the claimant's generally moderate limitations in the areas of social functioning and ability to maintain concentration, persistence, and pace, are consistent with the record as a whole and with the claimant's demonstrated functioning." *Id.* However, the ALJ gave little weight to Dr. Wheeler's opinion "that claimant's anxiety causes marked limitations in his ability to interact with others and stay on track" on the grounds that her assessment was "over-relian[t] on the claimant's self-report[.]" *Id.*

An ALJ may reject even a treating physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). The Court notes, in dealing with mental impairments in particular, that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Exam [(MSE)] allows the organization, completion

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the [MSE] is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original). Although "anyone can have a conversation with a patient, ... appropriate knowledge, vocabulary, and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" *Id.* at 3. "A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is 'biased by their understanding, experiences, intellect, and personality' (*id.* at 4), and in part because it is not uncommon for a person suffering from a mental illness to be unaware that her 'condition reflects a potentially serious mental illness.'" *George v. Colvin*, 2016 WL 899626 (W.D. Wa. March 2, 2016) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

Here, in addition to Mr. Allinson's self-reports, Dr. Wheeler based her conclusions on the MSE, a review of Mr. Allinson's prior psychiatric records, and her personal observations. Tr. 354-59. More specifically, Dr. Wheeler noted that she personally observed Mr. Allinson's anxiety caused him to sweat and stammer and that it interfered with his interaction with others. Tr. 355. She also noted she observed Mr. Allinson's poor concentration and that he was unable to stay on track and lost track of what he was thinking. Tr. 355. Moreover, during the MSE, Dr. Wheeler noted that Mr. Allinson's speech was voluminous, his mood and affect anxious, his thought process derails, his thought content self-deprecating, his attention distractible and that tests of his concentration showed he was slowed, effortful and unaware of errors. Tr. 359. These findings support Dr. Wheeler's finding of marked limitations in Mr. Allinson's ability to interact with others, communicate and perform effectively in a work setting with public contact,

1 to maintain appropriate behavior in a work setting, and to concentrate and stay on track. *Id.*,
2 355-56.  Thus, substantial evidence does not support the ALJ's rejection of Dr. Wheeler's
3 opinion as based more heavily on self-reports than on clinical observations and findings.  This
4 error was harmful because the ALJ failed to include these limitations in the RFC or in the
5 hypothetical to the VE.  *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (a VE's
6 testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a
7 claimant can perform jobs in the national economy); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th
8 Cir. 2012) (error is harmless where it is "inconsequential to the ultimate nondisability
9 determination").

10 Mr. Allinson also argues the ALJ erred in failing to account for his moderate limitations
11 in his ability to learn new tasks, be aware of normal hazards and take appropriate precautions,
12 and communicate and perform effectively in a work setting with limited public contact.  Dkt. 11
13 at 7.  The Court agrees.  The ALJ purports to accept Dr. Wheeler's assessment of generally
14 moderate limitations in the areas of social functioning and ability to maintain concentration,
15 persistence, and pace.  Tr. 23.  However, the ALJ does not specifically address Dr. Wheeler's
16 opinion that Mr. Allinson has moderate limitations in the ability to learn new tasks or be aware
17 of normal hazards and take appropriate precautions.  *See Garrison v. Colvin*, 759 F.3d 995, 1012
18 (9th Cir. 2014) ("[w]here an ALJ does not explicitly reject a medical opinion or set forth
19 specific, legitimate reasons for crediting one medical opinion over another, he errs.").  Moreover,
20 while the ALJ claims to accept the moderate limitation on social functioning i.e. in the ability to
21 communicate and perform effectively in a work setting with limited public contact, the ALJ fails
22 to include any limitation on social interaction in the RFC.  Tr. 23.  The Commissioner argues the
23 ALJ accounted for Dr. Wheeler's moderate limitations by limiting Mr. Allinson to "unskilled

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

work consisting of simple, repetitive tasks." Dkt. 18 at 9. However, these restrictions do not specifically address the limitations on social interaction or the ability to learn new tasks and be aware of normal hazards and take appropriate precautions. Moreover, the ALJ's error was harmful because she failed to include these moderate limitations in the RFC or in the hypothetical to the VE. *See Matthews*, 10 F.3d at 681; *Molina*, 674 F.3d at 1115.

On remand, the ALJ should reevaluate Dr. Wheeler's opinion that Mr. Allinson has marked limitations in his ability to interact with others, communicate and perform effectively in a work setting with public contact, to maintain appropriate behavior in a work setting, and to concentrate and stay on track. The ALJ should also reevaluate Dr. Wheeler's opinion that Mr. Allinson has moderate limitations in his ability to learn new tasks, be aware of normal hazards and take appropriate precautions, and communicate and perform effectively in a work setting with limited public contact.

### 2. *Eugene Kester, M.D., Nonexamining Physician*

Mr. Allinson argues the ALJ erred in evaluating Dr. Kester's opinion. Dkt. 11 at 11. The Court agrees.

Dr. Kester is a State agency reviewing psychiatric consultant who opined in December 2012 that Mr. Allinson was moderately limited in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 84. Specifically, Dr. Kester opined that Mr. Allinson was limited to the extent that he "can interact superficially with others." Tr. 84. The ALJ purports to give "significant weight" to Dr. Kester's opinion but fails to include the limitation to superficial interaction with others in the RFC. Tr. 22. The Commissioner concedes this was error but argues the error was harmless because the VE identified two jobs Mr. Allinson could perform (car wash attendant and pricing marker) that do

not require significant interaction with others.  Dkt. 18 at 9-11.  However, even if these jobs do not require "significant interaction" with others as the Commissioner argues, Dr. Kester limits Mr. Allinson to only superficial interaction with others.  *Id.*  Moreover, Mr. Allinson did not include *any* limitation on social interaction in the RFC or in the hypothetical to the VE and, as such, the VE's testimony lacks evidentiary value.  *See Matthews*, 10 F.3d at 681.  Under the circumstances, the Court cannot confidently conclude that no reasonable ALJ, when fully crediting Dr. Kester's testimony, could have reached a different disability determination.  *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("'[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006))).

### 3. Thomas Gritzka, M.D., Examining Physician

Mr. Allinson argues the ALJ misevaluated the opinion of Dr. Gritzka.  Dkt. 11 at 11-16. The Court disagrees.

Dr. Gritzka performed a physical examination of Mr. Allinson in March 2013, two years after the DLI.  Tr. 575-85.  Dr. Gritzka diagnosed Mr. Allinson with cervical degenerative spondylosis, lumbar degenerative spondylosis with right thigh sensory loss and L3-4 radiculopathy, status post open reduction internal fixation right distal femur and tibial plateu fracturs, post traumatic osteoarthritis medial compartment of the left knee, status post bilateral carpal tunnel syndrome, left medial humeral epicondylitis, and by history, major depressive disorder, generalized anxiety and a pain disorder, and chronic pain disorder.  Tr. 582.  Dr. Gritzka opined that:

> Since the examinee's alleged onset date of 2/23/11, he has not been able to participate on a regular and sustained basis eight hours a day, five days

> a week, in even sedentary activities.  As far as the specific date of onset, this is somewhat arbitrary because the examinee has had an evolving chronic pain syndrome.  However, he did have a specific event involving the riding lawnmower trailer incident and was last seen in the emergency room on or around 5/19/10.  Given the examinee's combined impairments related to chronic cervical degenerative spondylosis, degenerative lumbar spondylosis with right radicular symptoms, post traumatic osteoarthritis of the right knee, degenerative arthritis of the medial compartment of the right knee and intermittent symptomatology related to medial humeral epicondylitis, the examinee has probably been unable to work even at sedentary work on a regular and sustained basis since 2/23/11.  In addition to the examinee's physical diagnosis, he does have psychological diagnoses as outlined above which also impair his ability to work.  The examinee states that the combination of back pain related to sitting and his anxiety and agoraphobia prevented him from continuing his rehabilitation classes.

Tr. 582-83.  Dr. Gritzka went on to opine that: Mr. Allinson was limited to sitting and standing two hours each in an eight hour workday and would probably be able to sit less than one hour continuously before having to get up; it would have been reasonable for Mr. Allinson to lie down or recline for two hours at will to alleviate neck, back and knee pain during the relevant time period; examination results and imaging reports were consistent with a need to rest for 10 to 15 minutes after standing or walking for 10 to 15 minutes; if Mr. Allinson had attempted even sedentary work since February 2011, the combination of his medical impairments would probably have resulted in absenteeism two or more days per month on a more probable than not basis.  Tr. 538-39.

The ALJ discounted Dr. Gritzka's opinion on the grounds that "[h]is opinion that the chronicity of the claimant's symptoms dated back to his alleged onset date is speculative and is largely based upon the claimant's self-report of symptoms and the assumption that the claimant is a reliable and accurate historian, which the record shows he is not."  Tr. 23.  Mr. Allinson contends the ALJ improperly discounted Dr. Gritzka's opinion because it is comprehensive and well-supported and "based on a thorough review of medical records, including imaging reports."

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

1   Dkt. 11 at 12-13.

2   "[M]edical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).  However, an ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).  An ALJ may also reject a medical opinion that is "brief, conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Here, Dr. Gritzka does state that "[s]ince the examinee's alleged onset date of 2/23/11, he has not been able to participate on a regular and sustained basis eight hours a day, five days a week, in even sedentary activities." Tr. 582.  However, in the very next sentence Dr. Gritzka acknowledges that "[a]s far as the specific date of onset, this is somewhat arbitrary because the examinee has had an evolving chronic pain syndrome." *Id.*  Given this acknowledgment, it was reasonable for the ALJ to discount Dr. Gritzka's opinion as speculative that the chronicity of the claimant's symptoms dated back to his alleged onset date. *See Burch v. Barnhart*, 400 F.3d 676, 681-82 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (even where evidence may also admit of an interpretation more favorable to the claimant, where the ALJ's interpretation was rational, "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.")).  Mr. Allinson fails to directly challenge the ALJ's rejection of Dr. Gritzka's opinion on this basis and this finding is valid and supported by substantial evidence.  Thus, even if the ALJ erred in also rejecting Dr. Gritzka's opinion as based largely on self-reports, as Mr. Allinson argues, the inclusion of this additional erroneous reason is harmless. *See Carmickle v. Commissioner of Social Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason, among other reasons, is at most harmless error if

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

1  the other reasons are supported by substantial evidence and the erroneous reason does not negate
2  the validity of the overall determination).

3  Mr. Allinson further argues that because the ALJ improperly rejected Dr. Gritzka's
4  opinion, "she omitted impairments he identified from her step two finding, e.g., chronic pain
5  syndrome that accounted for his symptoms, and failed to consider the combined effect of Mr.
6  Allinson's physical and mental impairments." Dkt. 11 at 13.  However, as discussed above, the
7  ALJ properly discounted Dr. Gritzka's opinion.  Moreover, to the extent Mr. Allinson intends to
8  separately challenge the ALJ's failure to include chronic pain syndrome as a severe impairment
9  at step two, he fails to identify this as an issue in the Assignment of Error's section of his
10 Opening Brief.[4]  Dkt. 11 at 1.  Moreover, even if this argument were properly raised, Mr.
11 Allinson fails to point to any evidence demonstrating that chronic pain syndrome was a severe
12 medically determinable impairment prior to his DLI.  *See Artis v. Barnhart*, 97 Fed.Appx. 740,
13 741 (9th Cir. 2004) (claimant "bears burden of establishing the existence of a severe impairment,
14 and ultimate disability, prior to the last date insured[.]").  Accordingly, this argument fails.

15 Mr. Allinson also argues that the ALJ performed an inappropriate "DAA" analysis.  Dkt.
16 11 at 13.  Specifically, Mr. Allinson contends that "DAA law does not give the ALJ license to
17 simply throw out opinions that are based in part on drug addiction or alcoholism, especially
18 when the drug addiction or alcoholism is in remission and there are other psychological
19 impairments." *Id.* at 13-14.  However, the ALJ did not, as Mr. Allinson appears to argue, reject
20 Dr. Gritzka's opinion as based in part on drug addiction or alcoholism.  To the extent Mr.
21 Allinson intends a different argument he fails to adequately explain that argument and cites no

---

22 [4] The Court's Scheduling Order provides that "[b]eginning on page one, plaintiff must list the errors alleged, followed by a clear statement of the relief requested. … The Court will not
23 consider or rule on assignments of error that are not listed in this section of the opening brief." Dkt. 10 at 2.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11

authority or evidence from the record in support.  Such unsupported arguments may be deemed to be waived, and the Court declines to find any additional arguments in this portion of Mr. Allinson's brief.  *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)); *Carmickle*, 533 F.3d at 1161 n. 2 (issue not argued with specificity in briefing will not be addressed).

Mr. Allinson also argues that post-hearing evidence undermines the ALJ's rejection of Dr. Gritzka's opinion. Dkt. 11 at 14.  Specifically, the ALJ points to an addendum report by Dr. Gritzka dated December 2014 (nine months after the ALJ's decision). *Id.*; Dkt. 13.  Mr. Allinson indicates that the Appeals Council acknowledged receipt of the addendum and addressed it in the Notice of Appeals Council Action, but declined to include it in the record.  Dkt. 11 at 14.  The Notice of Appeals Council Action indicates that the new information is "about a later time" and does not affect the ALJ's decision with respect to the period prior to the DLI.  Tr. 2.  Mr. Allinson argues the Court must consider this evidence in determining whether the ALJ's decision is supported by substantial evidence. Dkt. 11 at 15-16.  The Commissioner argues that this information was properly excluded from the record by the Appeals Council and it should not be considered in assessing whether the ALJ's decision is supported by substantial evidence.  Dkt. 18 at 14.

Even if the Court accepted the post-hearing addendum as properly part of the record, the addendum does not undermine the ALJ's rejection of Dr. Gritzka's opinion as it largely restates what was said in the original report. Dkt. 13.  Mr. Allinson argues the addendum report explains that the original report was not based on self-reports but on objective findings. Dkt. 11 at 14;

Dkt. 13. He also points to the statement that "[o]rthopedic conditions do not form 'overnight'" and "it is reasonable and more probable than not to a reasonable degree of medical certainty that Mr. Allinson was having the same symptoms and limitations back to 2/23/11[.]" Dkt. 13. However, even if the addendum report more fully addresses the objective (rather than subjective self-reported) basis for Dr. Gritzka's original opinion, it does not directly explain or address the statement that the onset date of Mr. Allinson's symptoms is "somewhat arbitrary due to chronic pain syndrome." Tr. 582. As such, the addendum does not undermine the ALJ's rejection of Dr. Gritzka's opinion as speculative that the chronicity of Mr. Allinson's symptoms dated back to his alleged onset date.

In summary, the ALJ reasonably discounted Dr. Gritzka's report and the post-hearing evidence, even if considered, does not undermine that finding.

### 4. Margene Fields, ARNP

Mr. Allinson argues the ALJ erred in evaluating the opinion of nurse practitioner Ms. Fields. Dkt. 11 at 3-4. The Court agrees.

Ms. Fields is a nurse practitioner and, as such, is considered an "other source" witness.[5] An ALJ must give germane reasons for discrediting the testimony of other source witnesses. *See Molina*, 674 F.3d at 1111. In October 2010 Ms. Fields conducted a functional assessment of Mr. Allinson in which she opined that Mr. Allinson could stand for 30 minutes at a time in an eight-hour workday, but could otherwise do several hours alternating sitting and standing. Tr. 628-29. Ms. Fields opined that Mr. Allinson could sit for four hours in an eight-hour workday, could lift

---

[5] Only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513 (a). In contrast, nurse practitioners are defined as "other sources," and are not entitled to the same level of deference as acceptable medical sources. *See Molina*, 674 F.3d at 1111 (9th Cir. 2012); *and see* 20 C.F.R. § 404.1513 (d); 20 C.F.R. § 404.1527; *Huff v. Astrue*, 275 Fed.Appx. 713, 716 (9th Cir. 2008) (physical therapists are considered "other sources").

1  25 pounds occasionally and 10 pounds frequently and that "standing requires movement of 15-20
2  minutes." *Id.*

3  The ALJ gave Ms. Fields' opinion "some weight" and accounted for her lifting and
4  carrying limitations in the RFC by restricting him to light work. Tr. 20. The ALJ also accounted
5  for the sitting and standing limitations in the RFC by requiring that Mr. Allinson be "allowed a
6  sit/stand option with changes every 30 minutes." Tr. 20. However, although the ALJ mentions
7  Ms. Fields' opinion that standing requires movement of 15-20 minutes, she does not incorporate
8  this limitation into the RFC nor does she give any reason, germane or otherwise, to reject it. Tr.
9  20. This was error. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony … is
10 competent evidence that an ALJ must take into account, unless he or she expressly determines to
11 disregard such testimony and gives reasons germane to each witness for doing so.").

12 The Commissioner argues that the RFC requirement of a "sit/stand option with changes
13 every 30 minutes" was reasonable and sufficiently inclusive of the limitations in Ms. Fields'
14 opinion. Dkt. 18 at 2; Tr. 20. However, the opinion that "standing requires movement of 15-20
15 minutes" is clearly a separate limitation that is not addressed by the requirement of a sit/stand
16 option. Tr. 629. The Commissioner also argues that Ms. Fields did not specifically state that
17 Mr. Allinson necessarily needed to move away from his work station every 15-20 minutes but
18 only that standing requires movement of 15-20 minutes. Dkt. 18 at 2. However, even if this
19 were a valid reason to reject this branch of the opinion, the ALJ did not discount Ms. Fields'
20 opinion on this basis and, thus, it constitutes a post-hoc rationalization which the Court cannot
21 rely upon to affirm the ALJ. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th
22 Cir. 2009) ("Long standing principles of administrative law requires us to review the ALJ's
23 decision based on the reasoning and factual findings offered by the ALJ-not *post hoc*

rationalizations that attempt to intuit what the adjudicator may have been thinking."). Moreover, to the extent the ALJ found this limitation ambiguous her duty was to develop the record, not to merely ignore the limitation. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."). Thus, the ALJ erred in failing to either adopt or give a germane reason for rejecting this branch of Ms. Fields' opinion.

This error was not harmless as the limitation was not included in the RFC or in the hypothetical to the VE. *See Matthews*, 10 F.3d at 681; *Molina*, 674 F.3d at 1115. Accordingly, on remand, the ALJ should reevaluate Ms. Fields' opinion that "standing requires movement of 15-20 minutes." Tr. 629.

### 5. Omar Gonzalez, PA-C

Mr. Allinson argues the ALJ erred in discounting the opinion of physician's assistant Mr. Gonzalez. Dkt. 11 at 4-5. The Court disagrees.

Mr. Gonzalez completed an assessment form in April 2011 in which he opined that Mr. Allinson could lift 20 pounds occasionally and 10 pounds frequently, as well as stand and sit for 2 hours each in an eight-hour workday. Tr. 351. He further opined that Mr. Allinson's condition was expected to impair work function for 30 days. *Id.* The ALJ gave Mr. Gonzalez's opinion "some weight." Tr. 23. Specifically, the ALJ accepted Mr. Gonzalez's finding that Mr. Allinson was capable of lifting 20 pounds occasionally and 10 pounds frequently, without postural limitations as generally consistent with the record as well as his own physical examination of Mr. Allinson. *Id.* However, the ALJ rejected the portion of Mr. Gonzalez's opinion that limited Mr. Allinson to standing two hours in an eight-hour workday and sitting two hours in an eight hour

workday as based on Mr. Allinson's self-reports and because, according to the opinion, these limitations were only expected to impair work function for 30 days.  Tr. 351.

The ALJ reasonably discounted Mr. Gonzalez's opinion on the grounds that the limitations were only expected to impair work Mr. Allinson's work function for 30 days.  *See Carmickle*, 533 F.3d at 1165 (upholding an ALJ's finding that a physician's opinion of temporary disability was entitled to "little weight in assessing the claimant's long-term functioning.").  Mr. Allinson argues the ALJ erred in rejecting Mr. Gonzalez's opinion on this basis because subsequent medical records from other providers, including Dr. Gritzka[6], show that Mr. Allinson's limitations persisted beyond 30 days.  Dkt. 11 at 5.  However, Mr. Gonzalez does not indicate that Mr. Allinson's limitations persisted beyond 30 days and the fact that other providers may have expressed different opinions does not, without more, undermine the ALJ's rejection of Mr. Gonzalez's opinion on this basis.  At best, Mr. Allinson's argument amounts to an alternative interpretation of the evidence but does not render the ALJ's rejection of Dr. Gonzalez's opinion unreasonable.  *See Burch*, 400 F.3d at 681-82.

Mr. Allinson also argues that the ALJ erred in rejecting Mr. Gonzalez's opinion as based largely on self-reports.  Dkt. 11 at 4-6.  However, the Court need not reach this issue because, even if this reason were erroneous, the ALJ provided a valid reason for rejecting Mr. Gonzalez's opinion and the inclusion of additional erroneous reasons is at most harmless.  *See Carmickle*, 533 F.3d at 1162.

**B.    Lay Testimony**

Mr. Allinson argues the ALJ erred in discounting the lay testimony of Sheila Anderson.  Dkt. 11 at 16-17.  The Court disagrees.

---

[6] As discussed above, the ALJ also properly discounted the opinion of Dr. Gritzka.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 16

Ms. Anderson submitted a statement in February 2014 in which she indicated she had known Mr. Allinson for 21 years and they had been in a relationship for about 20 years. Tr. 271. She indicated that "I see Scott nearly every day" and that "[he] has not been able to work because of his chronic pain in his back, left knee pain, and hands, as well as depression." *Id.* The ALJ gave "little weight" to Ms. Anderson's observations because "she fails to mention that she and the claimant had broken up in 2008 and did not resume their relationship until 2012, after the time period at issue." Tr. 24. Substantial evidence supports this finding. At the hearing Mr. Allinson testified that he and Ms. Anderson had broken up in 2008 and that they had resumed their relationship in late 2011 or 2012. Tr. 65-66.

Even if the ALJ did err in discounting the lay testimony on this basis, she also gave several valid reasons for discounting Mr. Allinson's testimony, which he does not challenge, that apply with equal force to Ms. Anderson's lay testimony. Specifically, the ALJ properly discounted Mr. Allinson's testimony as inconsistent with his level of activity and the medical record. Tr. 21-22. Ms. Anderson's statements regarding Mr. Allinson's impairments and limitations are essentially the same as Mr. Allinson's himself. Thus, even if the ALJ's reasons for rejecting Ms. Anderson's lay testimony were not sufficient, any error was harmless. *See Molina*, 674 F.3d at 1122 ("Although the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as [the claimant's] own testimony, and the ALJ's reasons for rejecting [the claimant's] testimony apply with equal force to the lay testimony.").

Mr. Allinson also argues that the post-hearing statement by Ms. Anderson, dated February 2015, undermines the ALJ's rejection of her testimony.[7] Dkt. 11 at 17. The Court

---

[7] This post-hearing statement was included in the record but the Appeals Council found it did not

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 17

disagrees. In her post-hearing statement Ms. Allinson indicates that "we have been in a relationship for about 20 years but were 'broke up' during the period of approximately 2008 to 2012. However, [Mr. Allinson] still had personal items at my house and we still saw each other often … We were still living off/on at each other's houses during this period of time and I saw him at least 2-3 days out of the week, sometimes up to 5 days a week." Tr. 284. However, this statement does not undermine the ALJ's rejection of Ms. Allinson's testimony due to her failure to acknowledge the breakup during the relevant time period. Moreover, the post-hearing statement does not undermine the ALJ's clear and convincing reasons for discounting Mr. Allinson's testimony which apply with equal force to Ms. Anderson's statements.

In sum, the ALJ did not harmfully err in evaluating the lay testimony.

**C.      RFC and Step Five**

As discussed above, the ALJ erred in evaluating the medical evidence including the opinions of Dr. Wheeler, Dr. Kester and Ms. Fields. Following remand, the ALJ should reevaluate the opinions of Dr. Wheeler, Dr. Kester and Ms. Fields as provided above, re-assess and determine the RFC, and reevaluate steps four and five.

D.      **Scope of Remand**

In general, the Court has discretion to remand for further proceedings or to award benefits. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990). The Court may remand for benefits where 1) the record is fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

---

provide a basis for changing the ALJ's decision. Tr. 2, 5.

medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, it is not clear from the record that the ALJ would be required to find Mr. Allinson disabled if the evidence were properly considered. There is conflicting medical evidence which must be reweighed and resolved by the ALJ. Accordingly, it is appropriate to remand this case for further administrative proceedings.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Dr. Wheeler's opinion that Mr. Allinson has marked limitations in his ability to interact with others, communicate and perform effectively in a work setting with public contact, to maintain appropriate behavior in a work setting, and to concentrate and stay on track. The ALJ should also reevaluate Dr. Wheeler's opinion that Mr. Allinson has moderate limitations in his ability to learn new tasks, be aware of normal hazards and take appropriate precautions, and communicate and perform effectively in a work setting with limited public contact. The ALJ should reevaluate Dr. Kester's opinion that Mr. Allinson can interact superficially with others as well as Ms. Fields' opinion that standing requires movement of 15-20 minutes. As necessary, the ALJ should develop the record, re-assess and determine the RFC, and proceed with steps four and five of the sequential evaluation process.

1   DATED this 30th day of August 2016.

*[signature: John C. Coughenour]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 20